UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

MICHAEL SPURLING                  )
                                       )
        Plaintiff,             )
                                       )        No. 1:09-cv-266
v.                             )        *Lee*
                                       )
ALLSTATE INDEMNITY COMPANY,    )
                                       )
        Defendant.       )

## MEMORANDUM AND ORDER

Before the Court is Plaintiff's motion for a new trial solely on the issue of damages [Doc.

39]. For the reasons below, Plaintiff's motion will be **DENIED**.

## I.      BACKGROUND

On January 2, 2009, a fire occurred in a dwelling located at 214 Decatur Pike, Athens,

Tennessee. The property was insured in Plaintiff's name for $67,636. Plaintiff filed a claim for the

loss, but Defendant denied the claim. Plaintiff then brought suit, alleging several types of damages:

(1) breach of contract damages for the policy limits, (2) statutory damages for bad faith denial of

coverage, (3) materials and labor used to seal off the dwelling after the fire, and (4) punitive

damages. Plaintiff later affirmatively abandoned his claims for statutory bad faith damages and

punitive damages. Defendant raised two defenses: that Plaintiff (or someone acting on his behalf)

intentionally set the fire, and that Plaintiff made material misrepresentations during the investigation.

Either defense, if proven, would have voided the policy.

At trial, with respect to the value of the loss, Plaintiff put on proof that the property was

insured with a coverage limit of $67,636 and that he purchased the property for approximately $30,000. There was also evidence that Plaintiff had entered into an agreement to sell the property to Tommy Jack, a family friend, for $50,000. Tommy Jack testified he was living in the dwelling at the time of the fire. In addition, Plaintiff presented testimony that the dwelling was a total loss and was uninhabitable, and that the land, apart from the dwelling, had little or no value. Plaintiff's father, however, testified that the property had recently been re-zoned for commercial use. Defendant presented evidence that the house was in very poor condition and infested with fleas before the fire. Defendant also elicited testimony that during the time between purchasing the property for about $30,000 and selling it for $50,000, Plaintiff and his father did not make any improvements to the property. Defendant theorized that the contract of sale to Tommy Jack was not an arms-length, bona fide transaction and put on proof that the dwelling was unoccupied at the time of the fire, contrary to the testimony of Plaintiff, his father, and Tommy Jack. Defendant also examined Tommy Jack about a prior felony conviction.

With respect to other damages, Plaintiff presented testimony that he paid a renewal premium of $694.12 after the fire loss. In connection with that testimony, Plaintiff examined Defendant's representative about a statement in a letter from Defendant that if a policy was found to have been obtained by misrepresentation, it would be declared void and all premiums would be returned. Additionally, Plaintiff introduced two receipts—one for $104.38 and another for $350—for materials and labor associated with sealing off the dwelling after the fire. Plaintiff put on proof that Defendant's agent agreed to reimburse him for those expenses but he was never reimbursed.

At the conclusion of Plaintiff's case, Defendant moved for a directed verdict on the ground that Plaintiff, who had not at that time introduced the contract of insurance into evidence, had not

2

proven the terms of the agreement. That motion was denied on the basis that Plaintiff had presented enough evidence for a reasonable jury to find that he was owed, if nothing else, the amounts specified on the receipts for materials and labor. Plaintiff introduced the policy during his rebuttal proof.

The Court instructed the jury that Defendant bore the burden to prove the defenses of arson and/or misrepresentation. The Court further instructed that Plaintiff bore the burden to prove his damages, and that speculative damages could not be awarded. For breach of contract damages generally, the Court instructed the jury that a party is entitled to damages to put him in as good a position, but not a better position, than he would have been had the contract been fulfilled. As a measure of damages to the dwelling, the Court instructed:

> The measure of damage to a house or building structure is the lesser of the following amounts: (1) the reasonable cost of repairing the damage to the property; or (2) the difference between the fair market value of the premises immediately prior to and immediately after the damage.

In addition, the Court instructed the jury that a witness may be impeached by contradictory evidence or evidence of a felony conviction, and that if a witness is shown to have knowingly given materially false testimony, the jury may reject that witness's testimony in part or in full.[1]

The jury returned a verdict in favor of Plaintiff. The jury specifically found that Defendant had failed to prove the defenses of arson and misrepresentation. Nevertheless, the jury awarded only $1148.50 as the reasonable value of Plaintiff's loss. Defendant speculates that the jury awarded Plaintiff the cost of his renewal premium plus the amounts specified on the receipts for materials and labor used to seal off the dwelling after the fire, which, coincidentally, add up to $1148.50.

---

[1] Neither party objected to the Court's jury instructions.

3

## II.  ANALYSIS

### A.  Standard of Review

Federal law governs the Court's consideration of a motion for new trial, even in a diversity case. *Rush v. Ill. Cent. R.R. Co.*, 399 F.3d 705, 727 (6th Cir. 2005).  Under Fed. R. Civ. P. 59, the Court may grant a new trial or a partial new trial where the verdict is against the clear weight of the evidence, but "the 'jury's verdict should be accepted if it is one which could reasonably have been reached.'" *Rush*, 339 F.3d at 727 (*quoting Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000)).  Thus, a jury's verdict should not be discarded merely because different inferences and conclusions could have been drawn from the evidence or even because another result appears more reasonable. *Nolan v. Memphis City Schools*, 589 F.3d 257, 264 (6th Cir. 2009).  Furthermore, "a new trial for inadequate damages is appropriate only where the evidence indicates that the jury awarded damages in an amount substantially less than unquestionably proved by the plaintiff's uncontradicted and undisputed evidence." *Bell v. Johnson*, 404 F.3d 997, 1003 (6th Cir. 2005).

### B.  Adequacy of Jury's Award

Plaintiff argues that the verdict is facially inconsistent and so inadequate as to shock the conscience.  Essentially, Plaintiff argues that, having found that the policy of insurance was not void due to arson or misrepresentation, the jury could not reasonably have found he was entitled only to $1148.50 in damages.  Plaintiff argues that he presented "uncontroverted" evidence that the value of the dwelling before the fire was at least $50,000 and that it was a total loss.  Defendant argues that the jury reasonably and properly followed its instructions and declined to award damages which were not proven.

The Court finds that the jury could reasonably have declined to award substantial damages

for the damage to the dwelling structure. Per the Court's instructions, the jury was permitted to award the lesser of two amounts: the cost of repairs and the difference between the fair market value of the premises immediately prior to and immediately after the fire. Plaintiff offered limited evidence of repairs—namely, testimony and receipts tending to show he spent $104.38 for materials and $350 for labor to seal the dwelling's windows after the fire. With no other evidence of repairs, however, the jury could have awarded further damages only by taking the difference of the property's market value before the fire and its value after the fire. The burden of proving damages, however, was allocated to Plaintiff, and the jury was instructed not to speculate as to either of those values.

With respect to the value of the property before the fire, Plaintiff did present evidence that he had some sort of agreement for the purchase of the property with Tommy Jack for $50,000—evidence which the jury could reasonably have believed or rejected. Plaintiff, his father, and Tommy Jack each testified that Tommy Jack was living in the dwelling. Defendant, however, presented evidence that the dwelling was uninhabited at the time of the fire. Specifically, Defendant introduced pictures taken by the fire investigator showing appliances which were not in use, and in some cases, appeared unusable. Defendant also presented testimony tending to establish that the utilities were not in use at the dwelling. The jury was therefore entitled to infer that Tommy Jack was not living in the dwelling, and thus to decline to credit his other testimony. Accordingly, the jury was entitled to reject the figure of $50,000 as any sort of accurate measure of the property's actual value. Furthermore, and for the same reasons, the jury would not have acted unreasonably in concluding that Plaintiff's witnesses had knowingly testified falsely about a material issue—the value of the dwelling—and therefore to reject any or all of those witnesses' testimonies.

Plaintiff also presented evidence that he had purchased the home for about $30,000. Plaintiff

introduced a warranty deed on which the value of the property was listed at $30,000. Plaintiff also introduced the mortgage he gave to the seller in the amount of $33,000. Both documents were signed with Plaintiff's name. Defendant cross examined Plaintiff extensively about these signatures, and Plaintiff testified that although he had previously stated under oath that the signatures were his own, the documents were in fact signed by his father. Although Plaintiff explained that he thought his father could sign his name to the documents with a power of attorney, the jury could reasonably have believed that the representations of value on the deed and mortgage were not trustworthy. In addition, Defendant not only impeached Plaintiff's evidence of value, but also introduced conflicting evidence tending to show that the dwelling was flea-infested, uninhabited, and perhaps even uninhabitable.

Furthermore, even if the jury had credited Plaintiff's proof as to the value of the property before the fire, it would have been reasonable for it to reject Plaintiff's proof of its value after the fire. Plaintiff presented lay testimony that the property was worthless without the dwelling, and that the fire totally destroyed the dwelling, but Plaintiff did not offer any other appraisal of value. Additionally, Plaintiff's father testified that the property had recently been re-zoned for commercial use, justifying a reasonable inference that the property might have been no less valuable without a vacant residential dwelling than with such a dwelling. Put simply, Plaintiff cannot show that the additional damages he seeks to recover in a new trial were "unquestionably proved by . . . uncontradicted and undisputed evidence." *See Bell*, 404 F.3d at 1003.

To the contrary, even assuming that the jury awarded only the costs of sealing off the dwelling and an amount equal to the renewal premium, such an award would have been reasonable in light of the evidence. Plaintiff produced evidence of his costs in sealing off the dwelling after the

fire—costs that the jury could reasonably have awarded as repair costs under the insurance contract or as damages from the breach of a separate agreement. Similarly, Plaintiff put on uncontradicted proof that he paid the renewal premium, along with evidence that Defendant agreed to return the premium if it did not intend to honor the policy, and that Defendant did not return the premium after the parties' relationship fell apart. Therefore, the jury could reasonably have awarded Plaintiff the renewal premium in order to enforce that agreement. The jury's failure to award additional damages for the dwelling, moreover, would be inconsistent with the jury's finding that Defendant did not prove arson or misrepresentation. Instead, such an award would show merely that the jury found that neither party met its burden of proof—i.e., that Defendant failed to prove it was not liable for the loss of the dwelling, but that Plaintiff failed to prove the value of the loss. Because the verdict reached by the jury was reasonable in light of the evidence presented at trial, Plaintiff has not shown he is entitled to a new trial on the issue of damages.

III.    **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for new trial [Doc. 39] is **DENIED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE